## *In re* COOK and another.

*(District Court, S. D. New York. July 5, 1883.)*

1. BANKRUPTCY—ASSIGNEE'S ACCOUNT FOR ATTORNEY'S CHARGES.
   An assignee's account for moneys paid to an attorney for services not authorized by the court cannot.be allowed beyond what the evidence shows to be reasonable, having reference to the amount and circumstances of the estate.

2. SAME—CONCEALMENT OF BANKRUPT'S ESTATE.
   It is the business of the assignee to make reasonable preliminary inquiries as regards the facts of alleged concealment of the bankrupt's property

3. SAME—ASSIGNEE CLAIMING FOR SERVICES AS ATTORNEY.
   An attorney, in performing the ordinary duties of the assignee, cannot claim from the estate compensation as for professional services.

4. SAME—EXPENSE IN SEARCHING FOR PROPERTY.
   An assignee cannot be permitted to expend the chief part of the moneys collected by him in the employment of an attorney to find additional property, which results in nothing.

5. SAME—ALLOWANCE FOR ATTORNEY'S FEES.
   Where in 1874 an assignee received $1,250 upon sale of the bankrupt's book-accounts about two months after the adjudication, and in 1883 presented his account, in which $171.20 was charged for his disbursements and $1,068.36 for moneys paid to his attorney for alleged services, none of which was ever authorized by the court, and the attorney being dead and no bill of items being produced, and the testimony as to services being vague and general, *held,* that $300 only should be allowed for the attorney, and that·the assignee should account for the residue, with interest,—the money having been used by his own business firm.

Objections to an Assignee's Discharge.

*Hoes & Morgan,* for the assignee.

*D. W. McLean,* for creditors opposed.

BROWN, J. The assignee of the bankrupts in the above matter applies for the approval of his account, and for his discharge, upon the report of the register, to which objection is made on behalf of the creditors. The entire receipts of the assignee amounted to the sum of $1,250, derived from a single sale of the bankrupt's book-accounts, of $6,500, made on the twenty-fourth day of November, 1874. No other collections were made by the assignee from any source. His charges against the estate, in the account presented by him, are $1,294.86, being $44.86 in excess of his receipts. There has never been any dividend to creditors. The estate is debited $171.20 for fees of the clerk, register, and marshal, and for advertising in the various stages of the case. The residue of the debits is for moneys paid to Mr. E. C. D. Kittredge for his services as attorney for the assignee,.as follows: June 13,'1874, $50; December 7, 1874, $250; November 29, 1876, $368.36; December 16, 1876, $400; in all, $1,068.36. The attorney died before the presentment of the assignee's account.

The bankrupts were copartners, doing business in this city, and proceedings in bankruptcy against them were commenced by a peti-

tion in involuntary proceedings presented by the Meriden Company, and Bramhall, Deane & Co., two of their largest creditors. An adjudication of bankruptcy was made on the fifteenth of September, 1874, and on the thirteenth of October following, Mr. Deane, a member of the firm of Bramhall, Deane & Co., was appointed and qualified as assignee. On the fourteenth of November, upon an application to the court for leave to sell the book-accounts, an order of reference was made to ascertain the facts and report; and upon the report thereon an order permitting the sale of the book-accounts for $1,250 was made on the twenty-fourth of November, 1874, and on the same day the sale was made, and the sum of $1,250 paid to the assignee as above stated. This sum was then deposited by him with his own firm of Bramhall, Deane & Co., and an account on their ledger was opened with the assignee. Mr. Kittredge had been previously the attorney of Bramhall, Deane & Co. He conducted the involuntary proceedings upon which the bankrupts were adjudicated. The four sums paid to him, and charged in the assignee's account as above stated, were all paid by Bramhall, Deane & Co.; the first two by their checks payable to his order; the last two by their promissory notes made to the order of Kittredge; the one for $400 payable two months after date, and the one for $368.36 payable one month after date. In the testimony upon the accounting it is stated by one of the firm that the reason why the last two payments to Kittredge in November and December, 1876, were made in notes instead of money, was because "it was not convenient at the time to pay in money." As there was then a large balance in the firm's hands of the money deposited by the assignee with the firm on the twenty-fourth of November, 1874, the above statement is sufficient evidence either that Kittredge was not at that time deemed to be employed by the assignee as such, but by the firm on their own account to investigate the bankrupt's affairs, and that these notes were given in payment of their own debt; or else that the sum of $1,250, deposited with them by the assignee, had been used by the firm for their own benefit; and, in the latter case, as the assignee was a member of the firm, the use of the money must be deemed a use by himself, and he must be charged with interest.

The sums paid to Mr. Kittredge as attorney from 1874 to 1876, making in the aggregate $1,068.36, as above stated, were all paid without any order or approval of the court. To be allowed as charges against the estate, they must, therefore, be shown to have been either necessarily or reasonably incurred by the assignee, or expended for the benefit of the estate. Gen. Ord. 30, § 5099; *In re Noyes*, 6 N. B. R. 277; *In re Warshing*, 5 N. B. R. 350; *In re Davenport*, 3 N. B. R. 77; *Platt* v. *Archer*, 13 Blatchf. 351; *Hunker* v. *Bing*, 9 FED. REP. 277; *In re Drake*, 14 N. B. R. 150; *Ex parte Whitcomb*, 15 N. B. R. 92.

It is impossible to say, in reference to most of the payments to Mr.

Kittredge, that they are shown to have been for services either necessary or beneficial to the estate.

The testimony upon the accounting in support of the charges is all vague and general. No bill of items is presented showing what the precise services, or what any of the payments, were for. If any bill of items was ever rendered by the attorney it is lost. The services rendered by the attorney are shown in a general way to have been : (1) Procuring the adjudication in bankruptcy, for which a reasonable sum may be allowed, (*In re N. Y. Mail Steam-ship Co.* 7 Blatchf. 178;) (2) procuring the order for sale of book-accounts in November, 1874; (3) consultations as to a chattel mortgage in this city, and a mortgage on real estate in Warren county, both foreclosed long before the bankruptcy; (4) examination of the bankrupt, which was not concluded, was never signed, and the minutes of which are not produced, but are lost; (5) investigations as to property of the bankrupts alleged to be at Rutland, Vermont, on which business Mr. Kittredge went there twice, the result being that they concluded that the writer of the letters on which this action was based "did not know what he was writing about," and nothing was discovered, nor any legal proceedings, even, were ever instituted for the recovery of anything there.

The larger part of the attorney's charges, namely, those in November and December, 1876, for $768.36, is sought to be justified by the endeavors to find property of the bankrupts alleged to have been concealed at Rutland, and the attorney's necessary visits there on that business, as above stated. But I find nothing in the evidence or the circumstances sufficient to justify any considerable charges for an attorney in that matter. The employment of professional services must be cautiously guarded, and careful regard at all times maintained for the interest of the creditors, and the amount and circumstances of the estate. *In re N. Y. Mail Steam-ship Co.* 7 Blatchf. 178; *In re Drake,* 14 N. B. R. 150.

It is the business of the assignee himself to make all reasonable preliminary inquiries in regard to alleged concealment of property, and not to employ an attorney to do the assignee's proper work. The visits to Rutland were merely for inquiry into facts on the basis of certain letters received from some one there; inquiries such as any intelligent business person was competent to make, either in person or by correspondence. In this case, after the sale of the book-accounts, in November, 1874, the assignee paid little or no attention to the estate, but left everything, according to the testimony, to the management of Mr. Kittredge. If an attorney undertakes such business, he cannot claim compensation from the estate as for professional services. It would be an opprobrium upon the law, and is not to be tolerated, that an assignee, instead of distributing the fund collected among the creditors to whom it belongs, should be allowed to expend it all, or most of it, in the employment of counsel to perform the ordinary duties of the assignee, or in the alleged but vain endeavor to discover

other property, without the consent of creditors or the sanction of the court. Upon this subject 1 concur fully in the remarks of NIXON, J., in the *Case of Drake*, 14 N. B. R. 150, above cited.

In regard to the other services of the attorney, the evidence is so vague that it is difficult to determine, in the absence of a bill of particulars, what would be a reasonable compensation. There is no evidence of any special difficulty, or of laborious professional work of any kind, and the estate itself is small. Upon the whole, I think that $300, including the two items of June 13 and December 7, 1874, will be a liberal compensation for all services of the attorney which the evidence discloses, or which may be fairly inferred from it; and it is more than could be allowed upon such evidence were the attorney still living and his evidence procurable in support of the charges. The item of $58.55 paid to the attorney, September 18, 1874, appears by the ledger of the clerk of this court to have been paid by Mr. Kittredge for clerk's fees a few days afterwards, and is embraced in the sum of $171.20, disbursements above mentioned.

The assignee should, therefore, be allowed $300 for all the services of Mr. Kittredge as attorney; the sum of $171.20 for further disbursements; and $55.32, his own fees and commissions;—leaving from the sum of $1,250, collected by him, a balance of $723.48, which, with interest thereon from November 24, 1874, (with which the assignee must be charged, as the money was employed in the business of his own firm,) amounts to $1,092.45, on payment of which, less the sum of $50 costs allowed on this accounting, the assignee will be entitled to his discharge.